Argued January 6, reversed April 15, petition for rehearing
denied August 12, 1953

McCORMICK ET AL. *v.* WILLIAMS, JR.

255 P. 2d 1071

*Philip A. Levin,* of Portland, argued the cause for appellant. With him on the brief were Coan, Rosenberg & Swire, of Portland.

*William E. Dougherty,* of Portland, argued the cause for respondents. With him on the brief were Robin D. Day, of Salem, and Maguire, Shields, Morrison & Bailey, of Portland.

Before LATOURETTE, Chief Justice, and WARNER, LUSK, BRAND and PERRY, Justices.

## LUSK, J.

Plaintiffs brought this action to recover the purchase price of 21 bales of hops alleged to have been sold by them and delivered to and accepted by the defendant. A jury trial resulted in a judgment for the plaintiffs in the amount prayed for, $3,477.40, from which this appeal is taken.

The plaintiffs, father and son, operate a hop farm near Woodburn, Marion County, Oregon. The defendant, Ralph E. Williams, Jr., doing business under the firm name and style of "Williams & Hart", is a hop buyer. The controversy has its inception in a written contract entered into under date of March 9, 1944, at which time the firm of Williams & Hart consisted of the defendant, Ralph E. Williams, Jr., and Harry L. Hart, who has since died. By the terms of the contract plaintiffs agreed to deliver to Williams & Hart their entire saleable crop of hops of the growth of the year 1947. The purchase price to be paid is provided for in the contract as follows:

"Buyer agrees to pay to the Seller, as the purchase price of said hops, the growers' ceiling price as established by the O.P.A. or other governmental agency as such price exists on October 1, 1947. In the event that no ceiling price shall have been established by October 1, 1947, the price shall be the market price generally paid growers for hops of like quantity and quality on that date, but in no case shall it be less than 50¢."

Delivery was to be made free on board cars or in the warehouse at Donald or Salem, Oregon, between

the first day of October, 1947, and the 31st day of October, 1947.

The entire crop was delivered to the defendant and paid for except 22 bales of late clusters. One of these 22 bales was subsequently rejected, and the dispute relates to the remaining 21 bales.

The hops were brought to the warehouse in Salem in September, 1947. About September 19 most of them were inspected and accepted. The late clusters which were accepted were paid for on October 9, 1947, at the rate of 83 cents a pound, the market price on October 1, 1947. At the time of the original inspection 22 bales of late clusters were not accepted because the hops in them, or some of them, were found to be damp. They were returned by plaintiffs to their farm for further drying, and, after a lapse of several days, brought back to the warehouse in Salem. Plaintiffs claim that 21 bales of this lot were accepted by the defendant on October 14th. This the defendant denies, and he has argued in his brief that there is no evidence of such acceptance. He further contends that the action was brought, and the case tried, on the theory of an "agreed price" for the hops, and that there is no proof of such agreed price in the record. These questions were properly raised in the court below by motions for a directed verdict and for judgment notwithstanding the verdict, and the denial of the latter motion is the basis of defendant's first assignment of error.

We will first consider an objection made by plaintiffs to the sufficiency of this assignment of error. It reads:

"The court erred in failing to grant defendant's motion for a judgment in his favor notwithstanding the verdict of the jury."

■ Plaintiffs urge that the assignment presents nothing for review because it is too general, especially since the brief does not set out either the motion n.o.v. itself or the motion for a directed verdict upon which it was presumably based. The bill of exceptions discloses that the motion n.o.v. was based upon the ground that the defendant's motion for a directed verdict should have been granted, and that the cause was submitted to the jury at the request of plaintiffs with leave to defendant to move for a judgment n.o.v. should the verdict be in favor of the plaintiffs, agreeably to the practice outlined in § 6-707, OCLA, as amended. We think that an assignment of error of this kind should incorporate the motion for a directed verdict so that we may be enabled by a reading of the brief to determine whether the points argued here were presented to the trial judge as grounds of such motion. It would not be just, however, to penalize the defendant in this case for the inadequacy of his assignment of error, because a deficiency in our own rules may well have misled counsel for the defendant. Rule 13, 3 a, which governs assignments of error in law actions, provides in part:

"The following arrangement and wording, as far as applicable, together with reference to page of bill of exceptions, are required:

\* \* \* \* \*

"The court erred in denying the motion for nonsuit or directed verdict (Set out motion haec verba) \* \* \*."

There is no requirement in the case of an assignment of error based on the denial of a motion for judgment n.o.v. that the motion for a directed verdict be set out. That being so, counsel would have been justi-

fied in assuming that the general provision of the rule that "each assignment of error shall be clearly and succinctly stated" was not intended to include a specific requirement of that kind. We will, therefore, consider the appeal on its merits.

As stated, the grounds of the motion for a directed verdict were that the plaintiffs failed to prove either acceptance of the hops or the agreed price alleged. Defendant in his reply brief appears to have abandoned the issue of acceptance; this discussion will be confined, therefore, to the question whether there is proof of an agreed price. While the written contract, which is set up as an exhibit to the complaint, provided that the price to be paid for the hops, if there were no O.P.A. ceiling price on October 1, 1947 (and the evidence shows there was none), should be "the market price generally paid growers of like quantity and quality on that date", the amended complaint does not allege the market price on October 1, 1947, and does not seek to recover it as such, but alleges an express agreement as to the market price on October 14, 1947. We quote paragraph VII of the amended complaint:

> "On or about October 14, 1947, after said hops had been harvested and baled and placed in the Oregon Electric Railway Company warehouse at Salem, Marion County, Oregon, RALPH E. WILLIAMS, JR. and Harry L. Hart sampled, weighed and inspected all of said twenty-two (22) bales of hops; and at that said time there was no governmental ceiling price on said hops, and plaintiffs and the said RALPH E. WILLIAMS, JR. and Harry L. Hart agreed that the grower's market price, on that date for hops of the kind and quality of those so sampled and inspected and taken in by the said RALPH E. WILLIAMS, JR. and Harry L. Hart, was eighty-three (83) cents per pound."

There is no allegation that the parties agreed that the growers' market price on October 14, 1947, was to be paid by the defendant. But the intent of the pleader and the theory on which the case was tried are disclosed by the following colloquy between Mr. Day, attorney for the plaintiffs, and Mr. Swire, attorney for the defendant, and the court upon the trial and before the taking of testimony commenced:

"MR. SWIRE: It is the defendant's understanding of the issues of this case, based upon the pleadings, that the factual and legal issues are these: (1) whether or not the defendant accepted the hops which are the subject of this action; (2) whether or not the parties agreed to the payment for the hops as alleged and set forth in the plaintiffs' complaint. I think that is all.

"MR. DAY: It is further stipulated that all facts outside of the foregoing contentions of the defendant need not be proven.

"(Discussion, off the record.)

"MR. SWIRE: I am not admitting the price. I admit the only other issue is as to whether or not the defendant accepted the hops. If you think you have to prove the quality of the hops in order to establish your price, you will have to carry that burden. I cannot admit the quality of the hops.

"(Discussion, off the record.)

"THE COURT: You are going to prove that there was an acceptance of the hops and that there was an agreed price.

"MR. DAY. Yes.

"THE COURT: And any other proof is incidental to that issue?

"MR. DAY: Yes.

"MR. SWIRE: Yes.

"MR. DAY: And that will shorten the case considerably.

"MR. SWIRE: Yes, it will."

The written contract did not call for an agreed price in the sense that we are satisfied the term was used by court and counsel in the foregoing colloquy. The contract fixes the standard by which the price would be determined, i.e., the market price on October 1, 1947, while the stipulation of counsel at the trial referred to the price of 83 cents per pound on October 14, 1947, as the market price of the 21 bales of hops to which the parties then agreed. It is that price, as an agreed price for this particular lot of hops, that counsel for plaintiffs committed himself to prove. That it was so understood by the trial judge sufficiently appears from a consideration of the following matters: By the written contract plaintiffs warranted that the hops would be "of prime quality, in sound condition, cleanly picked, of even color, properly dried and cured, matured, but not over-ripe, flaky, and free from mould and sweepings". Plaintiffs alleged in their amended complaint that they duly performed all the terms and conditions of the contract to be performed on their part, and cultivated, sprayed, picked, dried, cured, and baled all the hops grown in said hop yards during the year 1947 in accordance with the contract. Defendant alleged in its answer that he rejected the 21 bales on September 19 (when they were first brought to the warehouse) for the reasons that they had not been properly dried and cured, that they had not been cleanly picked and contained an excessive amount of leaves and stems, and that they were not of prime quality or sound condition.

Thus, under the pleadings there was an issue as to the quality of the hops. The effect of the stipulation was to eliminate this issue. That obviously, was the reason for Mr. Day's statement, "that will shorten the case considerably." Counsel for plaintiffs con-

ceded this in their brief. The court so understood it, for, when counsel for plaintiffs sought to introduce samples of the hops as proof of their quality, the court excluded the evidence on the stated ground that "the quality of the hops is not an issue", and, in the charge, the court limited the issues to be determined by the jury to the two questions, whether the defendant "accepted from plaintiff the hops which are in dispute and agreed to pay for them at the rate of 83 cents per pound" and further instructed that the quality of the hops was not an issue in the case. To these instructions plaintiffs took no exception.

It is not to be disputed, therefore, that plaintiffs were not relying at the trial on the provision of the written contract respecting price. If that had been so they would have alleged the market price on October 1, 1947, and they would have been under the duty of proving that the hops were of the quality called for by the contract. And, even though they had established that the defendant had accepted the hops, it would have been open to defendant to prove that the hops were of inferior grade, thus reducing the purchase price, for, under a provision of the contract, defendant reserved the right to take hops of lower quality than that called for in the contract "at a reduction in price equal to the difference in quality between such hops and those specified under this contract."

The naked question for our decision is whether there is any evidence that defendant, having inspected and accepted the hops on October 14, 1947, agreed with plaintiffs that the market price of those hops was 83 cents a pound on that day, and that he would pay that price.

It is not contended that there is evidence that an express agreement as to price was made on October

14 or on any other day. The argument seems to be that the agreement can be spelled out of the entire transaction. The evidence is that after the crop of hops was brought to the warehouse the first time most of the bales were inspected. There were present at that time J. A. McCormick, one of the plaintiffs, Mr. Williams and Mr. Hart, and Ernest Netter, a hop buyer and inspector for Williams & Hart. Ninety-three bales of late clusters were found to be satisfactory and were "weighed in". The parties are agreed that "weighing in" constitutes an acceptance. According to the testimony of J. A. McCormick, Mr. Hart, upon discovering that the hops in one of the 22 bales were damp, told him to take the bales back, saying, "You put them on the kiln and put a little fire under them, and bring them back up here and Ernie will weigh them in." This testimony, it is contended by plaintiffs, constitutes evidence of a conditional acceptance of the hops, and for present purposes we may assume this to be so. J. A. McCormick further testified that "after they hit this bale [i.e., the wet bale] there were about 17 bales that they didn't go through at all." On October 10, 1947, defendant computed the price to be paid for 93 bales of late cluster hops previously accepted on the basis of 83 cents a pound as the market price on October 1. Plaintiff accepted payment accordingly.

The 22 bales were returned to the warehouse in Salem on October 14 by Pat McCormick, a son of the plaintiff, J. A. McCormick, and inspected by Netter. Twenty-one bales were weighed in. One was rejected.

There is no evidence that at the time of the original inspection and weighing in, or on October 14, 1947, or at any other time there was any discussion of price between the parties or their representatives. The only evidence on that subject is a memorandum of the ac-

count prepared by the defendant under date of October 10, 1947, and showing a price of 83 cents a pound for 93 bales of late clusters, net 18,286 pounds, and that, as stated, these hops were paid for at that rate. This evidence, of course, establishes the market price of 83 cents a pound on October 1, 1947, of the hops in the 93 bales.

These things being so, we think that whatever action was taken with reference to the 21 bales was referable to the terms of the written contract and that the price to be paid for them was controlled by the provisions of the contract. It was not a price agreed upon on October 14, 1947, for there is no evidence of such an agreement.

■ The argument on behalf of plaintiffs refers to testimony of J. A. McCormick to the effect that there was no difference between the quality of the hops in the bales paid for at 83 cents a pound and those in the 21 bales. The argument also quotes the provision of the contract concerning price, and states, "Of course, the price under the contract was the price on October 1, regardless of when the parties agreed on what the price had been." This is undoubtedly true *under the contract.* But plaintiffs did not sue under the contract. They alleged a new agreement about price made long after the contract was entered into, and this agreement they failed to prove. The testimony that the hops in the 21 bales were of the same quality as those previously accepted is not evidence of the agreement alleged. It is not evidence that the defendant found them to be of the same quality. Had there been such evidence, then perhaps an inference might be drawn of an agreement to pay the same price per pound that was paid for the other hops, though even this would not be evidence of an agreement that the market price on

October 14 was 83 cents a pound. Perhaps, on a liberal construction of the complaint and in view of the stipulation of the parties, proof of the latter would not have been essential to a recovery. But we are unable to see how, in any view that might be taken of the matter, plaintiffs could be relieved of the burden of proving the agreed price which they alleged. That they had failed to prove it was the opinion expressed by the trial judge both on the motion for a nonsuit and the motion for a directed verdict. He stated that he would grant the motion for a directed verdict, but, exercising his statutory discretion at the request of plaintiffs, he permitted the case to go to the jury, reserving the right to defendant to move for judgment n.o.v. in case the verdict should go against him. The denial of the motion we think was erroneous.

The result is not only one required by the strict rules of law, but the evidence indicates clearly that the judgment appealed from is not a just one. On December 5, 1947, Mr. Robin D. Day, attorney for plaintiffs, addressed the following letter to Williams & Hart:

"I have the Oregon Electric warehouse receipt #10074 issued at Salem, Oregon for 21 bales of hops, marked G-546-1. This 21 bales of hops were taken in by you on October 14, 1947 but no money has been paid to the McCormicks as yet. The 21 bales were inspected by Emil. I would appreciate your check for $2,274.44 in payment for these hops and I will mail you the warehouse receipt."

There were 4,190 pounds of late clusters in the 21 bales, making a price of about 54 cents a pound if the total price was $2,274.41.

The letter, as is apparent on its face, was not written as an offer of compromise. No attempt to

explain it was made by plaintiffs on the trial. It can be viewed as nothing else than plaintiffs' own estimate of the value of the hops in dispute. It may explain why plaintiffs chose to attempt to prove an agreed price of 83 cents a pound instead of the market value of the hops on October 1, 1947, as stipulated in the contract.

The judgment is reversed and the cause remanded with directions to enter judgment for the defendant notwithstanding the verdict.